[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14459
Non-Argument Calendar
_____

D.C. Docket No. 5:17-cv-00077-LGW-BWC

SREDRICK JONES,
as the surviving spouse of Brandi Nicole Griffin Jones,

Plaintiff–Appellant,

versus

DR. STEVE ANDERSON BEHAVIORAL MEDICINE, LLC, et al.,

Defendants,

D.O. WALLACE STEVE ANDERSON,
in his individual and professional capacity,
LPN TAMMY NICHOLE BASS,
in her individual and professional capacity,
SOUTH GEORGIA CORRECTIONAL MEDICINE, LLC,
KIM PHILLIPS,
in his individual capacity,
DOYLE WOOTEN,
in his individual and professional capacity,

Defendants–Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(March 26, 2019)

Before WILSON, WILLIAM PRYOR and HULL, Circuit Judges.

PER CURIAM:

Sredrick Jones, surviving spouse of Brandi Jones, appeals the summary judgment in favor of Doyle Wooten, the Sheriff of Coffee County; South Georgia Correctional Medicine, LLC, the medical services provider for the Coffee County Jail; and Nurse Tammy Bass. *See* 42 U.S.C. § 1983. Jones complained that the officials' deliberate indifference to the medical needs of his spouse during her pretrial detention caused her death. Brandi Jones reported undergoing treatment for mental illnesses and taking Subutex, a drug used to treat opioid addiction, to Nurse Bass during an intake evaluation, but Jones received no medicine because she denied abusing drugs and exhibited no signs of substance abuse. On her third day in jail, Jones suddenly had convulsions and was transported to a hospital, where she passed away four days later. The district court ruled that Nurse Bass and Sheriff Wooten were entitled to qualified immunity and that South Georgia Correctional Medicine was not liable because its employee, Nurse Bass, did not violate Jones's constitutional rights. We affirm.

2

## I. BACKGROUND

On July 8, 2015, Brandi Jones was arrested and booked into the Coffee County Jail at 6:45 p.m. At 10:50 p.m., Nurse Bass interviewed Jones and obtained her written consent to obtain "all medical records and/or information, . . . including any hospital or medical doctor or another place where medical records may be located." Jones reported that she was receiving treatment for mental illnesses from Dr. Mubbashir Khan, a local physician. Jones reported taking Subutex, but because she denied abusing drugs, Nurse Bass thought Jones was "misus[ing]" Subutex. Jones did not exhibit any signs of acute distress or other symptoms of substance abuse, and Nurse Bass was unaware that discontinuing Subutex could cause drug withdrawal syndrome. Nurse Bass classified Jones for routine supervision and placed her in the general population of the jail.

Unbeknownst to Nurse Bass, when Jones entered the Coffee County Jail, she had active prescriptions for Xanax, Subutex, Lexapro, Neurontin, and Seroquel. During Jones's detention, the jail had a policy that, "if alcohol and drug abuse related problems are identified, the jail nurse will refer the inmate/patient to the jail's medical director." The jail also had a kiosk where inmates could request an appointment with medical staff.

On the morning of July 9, 2015, officers transported Jones to Atkinson County on an outstanding arrest warrant. Wendy Funderburk, the assistant to the

3

Sheriff of Atkinson County, talked to Jones and observed that she "was in a very good mood and "did not appear ill and looked fine." Jones returned to the Coffee County Jail around 12:53 p.m.

Around 6:00 p.m. on July 10, 2015, Jones attended a church service in the jail led by Jan Boettcher. Boettcher noticed that Jones was "full of life, vibrant, and energetic." And Jones's cellmate, Josie Lee Travis, witnessed her "g[et] saved" and tell other attendees about her baby. When the two women returned to their cell, Travis noticed that Jones was not eating, she was pale and sweaty, and she was sleeping a lot. Travis asked Jones why she was "sleeping so much," and she replied that she was "coming off Suboxone and Xanax." Travis advised Jones to request medical treatment.

Around 12:37 a.m. the morning of July 11, 2015, Travis heard Jones having convulsions and breathing deeply. Travis saw her "hit the wall" and noticed that she could not move. Travis activated an alarm in their cell, but when officers arrived, Jones had stopped breathing. Officers attempted to resuscitate her while they waited for an ambulance to arrive.

Emergency technicians transported Jones to the Coffee County Regional Medical Center, where she passed away on July 15, 2015. A coroner classified Jones's death as "undetermined." The coroner reported that Jones's "cause of death [was] most likely due to drug withdrawal syndrome" based on her comment about

4

"'coming off' of Xanax and Subutex," Travis's statements that Jones had been "sleeping and not eating for the past two days" and had a "seizure-type activity," "the hospital clinical diagnosis of anoxic encephalopathy," her "negative hospital admission blood toxicology," and "the lack of cause of death-specific autopsy findings."

Sredrick Jones filed in a Georgia court a 20-count complaint against Nurse Bass, her employers, Dr. Wallace Anderson and South Georgia Correctional Medicine, Sheriff Wooten, and the administrator of his jail, Captain Kim Phillips, and they removed the action to the district court. Later, Sredrick Jones amended his complaint to allege that Nurse Bass, Dr. Anderson, South Georgia Correctional Medicine, Sheriff Wooten, and Captain Phillips were deliberately indifferent to Brandi Jones's serious medical needs, in violation of the Fourteenth Amendment. Sredrick Jones also alleged that Sheriff Wooten had failed to train his officers how to identify inmates with withdrawal syndrome; that South Georgia Correctional Medicine had a custom or policy of deliberate indifference; and that Nurse Bass, Dr. Anderson, and South Georgia Correctional Medicine had been negligent in violation of state law.

All the defendants moved for summary judgment. The officials argued that they were entitled to qualified immunity. South Georgia Correctional Medicine

5

moved for summary judgment based on sovereign immunity under the Georgia Constitution and under the Eleventh Amendment.

After Sredrick Jones dismissed his claims against Dr. Anderson, the district court granted the remaining defendants' motions for summary judgment and declined to exercise supplemental jurisdiction over his claims under state law. The district court ruled that Nurse Bass did not violate Brandi Jones's constitutional rights because she did not exhibit an obvious need for medical treatment. Alternatively, the district court ruled that Sredrick Jones failed to establish that Nurse Bass knew his spouse faced a substantial risk of serious harm if she discontinued using Subutex or that the nurse deliberately disregarded any risk of serious harm or acted with gross negligence by failing to order Brandi Jones's medical and prescription records. Next, the district court ruled that Sheriff Wooten did not participate in Brandi Jones's treatment and that he was not liable as a supervisor because no clearly established law required him to train his officers about drug withdrawal syndrome. And, in the alternative, the district court ruled that Sheriff Wooten had not acted with deliberate indifference to the need to train because he had contracted with a medical services company for inmates' treatment and he had instituted a system for inmates to report their health issues. Finally, the district court ruled that it did not have "to address [Sredrick Jones's] municipal liability claim against [South Georgia Correctional Medicine]" because he had

6

been unable to prove that Nurse Bass violated Brandi Jones's constitutional rights and he had voluntarily dismissed his claims against Dr. Anderson.

## II. STANDARD OF REVIEW

We review *de novo* a summary judgment based on qualified immunity. *Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1278 (11th Cir. 2017). Summary judgment is appropriate when there exists no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We "resolve all issues of material fact in favor of the plaintiff" and "then answer the legal question of whether the defendant is entitled to qualified immunity under that version of the facts." *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (internal quotation marks and citation omitted).

## III. DISCUSSION

Qualified immunity shields government officials who are acting within their discretionary authority from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Nam Dang*, 871 F.3d at 1278 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). If an official is acting within the scope of his discretionary authority when he or she committed the allegedly unlawful actions, the plaintiff must prove "that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. "We are required to grant qualified immunity to a defendant official unless the

plaintiff can demonstrate two things: (1) that the facts, when construed in the plaintiff's favor, show that the official committed a constitutional violation and, if so, (2) that the law, at the time of the official's act, clearly established the unconstitutionality of that conduct." *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015).

Sredrick Jones argues that Nurse Bass, South Georgia Correctional Medicine, and Sheriff Wooten violated the constitutional rights of his spouse during her pretrial detention. Because the parties agree that the officials were acting within their discretionary authority, they were not liable unless they "acted with deliberate indifference to" Brandi Jones's "objectively serious medical need." *Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008)). "[A] 'serious medical need' [is] one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Burnette*, 533 F.3d at 1330. To exhibit deliberate indifference, the officials had to have subjective knowledge of a risk of serious harm to Jones and had to have disregarded that risk by acting with more than gross negligence. *Id.*

Nurse Bass did not violate Brandi Jones's constitutional rights. Even if we assume that Jones had an objectively serious medical need, Nurse Bass was not subjectively aware that she was at substantial risk of developing drug withdrawal

8

syndrome. *See id.* Sredrick Jones argues that his spouse had active prescriptions for several medications, but she told Nurse Bass that she was taking only Subutex. And Nurse Bass thought she was "misus[ing]" Subutex because she denied abusing drugs and she did not appear to be in acute distress or exhibit any other symptom of substance abuse. Nurse Bass testified that she was "unaware" that discontinuing Subutex could cause drug withdrawal syndrome. Although Nurse Bass knew "a sudden stoppage of Xanax [could] cause withdrawal syndrome," Jones's use of that medicine was never communicated to Nurse Bass or to any other jail official. Jones and her cellmate, Travis, also never reported that Jones was sleeping excessively and fasting, which might have alerted officials that Jones required medical attention. Nurse Bass never was "aware of facts from which the inference could [have] be[en] drawn that a substantial risk of serious harm exist[ed]" for Jones. *See id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Sredrick Jones argues that Nurse Bass acted with deliberate indifference by failing to order Brandi Jones's medical and pharmaceutical records, but no evidence established that Nurse Bass's failure to order records manifested a conscious disregard for Jones's health. "No liability arises under the Constitution for 'an official's failure to alleviate a significant risk that he should have perceived but did not,'" *id.* at 1331 (quoting *Farmer*, 511 U.S. at 838), and we must judge Nurse Bass's conduct in the light of the information available to her. Nurse Bass

9

might "not escape liability if the evidence showed that [she] merely refused to verify underlying facts that [she] strongly suspected to be true, or declined to confirm inferences of risk that [she] strongly suspected to exist," *Farmer*, 511 U.S. at 843 n.8, but Nurse Bass never suspected that Jones was at risk of any harm. Had Nurse Bass known that discontinuing Subutex could cause drug withdrawal syndrome or that Jones had been taking Xanax, the failure to administer medication to her might have been so cursory as to amount to a conscious disregard of her medical needs. *See Burnette*, 533 F.3d at 1330. But Sredrick Jones never established that Nurse Bass was aware that Brandi Jones had a serious medical need that warranted further investigation and declined to pursue the matter further.

Sredrick Jones's claim against South Georgia Correctional Medicine fails as a matter of law. "[W]hen a private entity contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the municipality under section 1983." *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (internal quotation marks and citation omitted). Sredrick Jones had to prove that the agents of South Georgia Correctional Medicine violated his spouse's constitutional rights and its policy or custom was the "moving force behind" the deprivation of her rights. *See id.* Because Brandi Jones did not suffer a

10

constitutional violation, South Georgia Correctional Medicine was not subject to municipal liability. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

The failure of Sheriff Wooten to train his officers regarding drug withdrawal syndrome did not exhibit deliberate indifference to Brandi Jones's constitutional rights. Sredrick Jones argues that Sheriff Wooten refrained from training his officers although he knew training was needed based on "a widespread pattern of prior abuse" of "inmates suffering withdrawal"; caselaw that makes it unlawful to delay or to withhold from inmates treatment for alcohol withdrawal syndrome; and "obvious" guidance provided in our precedents. *See Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1053 (11th Cir. 2014); *Willingham v. Loughnan*, 321 F.3d 1299, 1302 (11th Cir. 2003). But Sredrick Jones's evidence fails to establish that inmates were neglected or denied treatment by untrained employees. *See Keith*, 749 F.3d at 1053. Nurse Bass's testimony that she saw more than 50 inmates suffering from withdrawal syndrome at the jail established only that inmates experienced withdrawal syndrome. And Travis, who witnessed inmates suffering from withdrawal syndrome, said the jail "most of the time. . . put them on Vistaril and something for nausea . . . ." Sredrick Jones also cites no precedent that clearly established the need for Sheriff Wooten to train his officers to identify drug withdrawal syndrome. *See id.* Our caselaw may "put supervisors on notice that policies or customs of delayed investigation into and the treatment of alcohol

11

withdrawal would be unlawful," *Harper*, 592 F.3d at 1237, but it does not address training officers to identify signs of drug withdrawal, *see Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012) ("[P]recedent . . . [must] stake[] out a bright line."). And our precedents that hold that the "knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference," *Adams v. Paog*, 61 F.3d 1537, 1543 (11th Cir. 1995), do not make it "obvious" that officers at the Coffee County Jail required better training. *See Willingham*, 321 F.3d at 1302. The record contains no evidence that a jail official subjectively knew that Brandi Jones needed medical care.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Nurse Bass, South Georgia Correctional Medicine, and Sheriff Wooten.